UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

STEVEN SERRANO, MICHAEL SERRANO, and
SAMUEL GARCIA,

                                        Plaintiffs,

        -against-

THE CITY OF NEW YORK, a municipal entity;          **COMPLAINT**
New York City Police Detective ANTHONY
DISIMONE (Shield No. 000340) in his individual
capacity; New York City Police Detective THOMAS     **JURY TRIAL**
MCHALE (Shield No. 004937) in his individual
capacity; and "JOHN and/or JANE DOES" 1, 2, 3,
etc. (whose identity are unknown but who are known
to be personnel of the New York City Police
Department), all of whom are sued in their individual
capacities,

                                        Defendants.

------------------------------------------------------------------ X

        Plaintiffs STEVEN SERRANO, MICHAEL SERRANO, and SAMUEL GARCIA, by

their attorneys, Beldock Levine & Hoffman LLP, as and for their complaint against the defendants

alleges as follows:

## PRELIMINARY STATEMENT

        1.      This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State

law for injuries Plaintiffs suffered from the unconstitutional conduct of defendants THE CITY OF

NEW YORK, and New York City Police Detective DISIMONE (Shield No. 000340), New York

City Police Detective  MCHALE (Shield No. 004937), and New York City Police Officers "JOHN and/or JANE DOES" 1, 2, 3, etc.

2.      Plaintiffs seeks redress for substantial injuries they suffered when they were unlawfully detained and arrested.  Plaintiffs seek (i) compensatory damages for physical injuries, psychological and emotional distress, and financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights.

4.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

5.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiffs' claims took place.

## JURY DEMAND

6.      Plaintiffs demand a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

7.      Plaintiff STEVEN SERRANO is a citizen of the United States, and at all times relevant to this complaint was a resident of Bronx County, City and State of New York.

8.      Plaintiff MICHAEL SERRANO is a citizen of the United States, and at all times relevant to this complaint was a resident of the City of Hazleton, County of Luzerne, and State of Pennsylvania.

9.      Plaintiff SAMUEL GARCIA is a citizen of the United States, and at all times relevant to this complaint was a resident of Bronx County, City and State of New York.

10.      Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

11.      The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

12.      Defendants New York City Police Detective ANTHONY DISIMONE (Shield No. 000340), New York City Police Detective THOMAS MCHALE (Shield No. 004937), and New York City Police Officers JOHN and/or JANE DOES 1, 2, 3, etc. ("DOES") (collectively "Individual Defendant Officers") are NYPD Police Officers who unlawfully stopped, detained, and arrested plaintiff without suspicion of any illegal activity and using excessive force.

13.      Upon information and belief, defendants Detective DISIMONE, Detective MCHALE, and DOES are still NYPD Police Officers.

14.      At all times relevant herein, defendants Detective DISIMONE, Detective MCHALE, and DOES have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, and incidental

3

to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

15.     At all times relevant herein, defendants Detective DISIMONE, Detective MCHALE, and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

16.     STEVEN and MICHAEL SERRANO served a Notice of Claim upon the City of New York within ninety days of the events giving rise to her claims.

17.     STEVEN and MICHAEL SERRANO attended a hearing pursuant to section 50-h of the New York General Municipal Law on March 10, 2015.

18.     More than thirty days have elapsed since plaintiff served their Notices of Claim and the City has not offered adjustment or payment of their claims.

19.     This action is filed within one year and ninety days of the events giving rise to plaintiffs' claims.

## STATEMENT OF FACTS

20.     In early July 2015, the SERRANO family had moved to an apartment on Bronx Park South after living in the East Tremont section of the Bronx for over 30 years.

21.     On the afternoon of July 22, 2015, Plaintiffs STEVEN SERRANO ("STEVEN") and SAMUEL GARCIA ("SAMUEL") were talking in front of their apartment building on Bronx Park South.

22.     At approximately 2:15 PM, four individuals, who plaintiffs later discovered were plainclothes NYPD Officers, including, upon information and belief, Defendant Detectives DISIMONE and MCHALE, ran toward STEVEN and SAMUEL.

23.     As the plainclothes officers approached STEVEN and SAMUEL, without a lawful basis, they yelled "Get up against the wall."

24.     STEVEN and SAMUEL complied with the officers' order, placing their hands in the air and standing against the exterior wall of their apartment complex.

25.     Without reasonable suspicion that they were armed or engaged in unlawful activity, the officers conducted searches of both STEVEN and SAMUEL.

26.     At approximately this time MICHAEL SERRANO ("MICHAEL"), who was inside STEVEN'S ground level apartment heard a commotion outside, looked out the window, and saw approximately four individuals surrounding his brother and SAMUEL.

27.     Fearful for STEVEN's and SAMUEL's safety, MICHAEL ran out of the apartment, into the building's lobby area, and walked toward the main entrance that leads to the sidewalk where MICHAEL and SAMUEL were being detained.

28.     As MICHAEL attempted to open the door that led to the sidewalk, he felt resistance from the opposite side and struggled to open the door.

29.     Eventually, MICHAEL opened the door and found a plainclothes NYPD officer on the other side.

30.     The plainclothes officer grabbed MICHAEL, pulled him outside, onto the sidewalk, and threw him against the wall where STEVEN and SAMUEL were being detained.

31.     Without reasonable suspicion that MICHAEL was armed or engaged in unlawful activity, a plainclothes officer searched him.

32.     At one point STEVEN asked the officers why he was being detained.

33.     A plainclothes officer responded, in sum and substance, "Be quiet and pay attention."

34.     The plainclothes officers then started handcuffing STEVEN, SAMUEL, and MICHAEL (collectively "PLAINTIFFS").

35.     Before STEVEN was handcuffed, he asked the officers to double-cuff him because a single set of handcuffs would be too small for his torso and would cause pain to his arms and shoulders.

36.     The officer told STEVEN that he would double-cuff him.

37.     STEVEN was never double-cuffed and experienced pain in his hands, wrists, arms, and shoulders as a result.

38.     After approximately fifteen minutes, several plainclothes NYPD officers brought two people in handcuffs to the area where PLAINTIFFS were detained.

39.      PLAINTIFFS had never seen either of these individuals prior to this incident.

40.     PLAINTIFFS were loaded into the back of an unmarked NYPD van and driven around for approximately three-and-a-half hours before being taken to the 48th Precinct.

41.     PLAINTIFFS were in handcuffs the entire time they were in the van.

42.     At the 48th Precinct, PLAINTIFFS were processed and placed in a holding cell.

43.     Defendant DISIMONE signed the criminal complaint charging PLAINTIFFS with one count of Criminal Sale of a Controlled Substance in the third degree, in violation of New York Penal Law § 220.39(1), one count of Criminal Possession of a Controlled Substance in the third degree, in violation of New York Penal Law § 220.16(1), and Criminal Possession of a Controlled Substance in the seventh degree, in violation of New York Penal Law § 220.03.

44.     At approximately 9:00 PM, PLAINTIFFS were told that they were arrested for possession of heroin with intent to sell.

45.     At one point in the evening, STEVEN and MICHAEL were taken to a private room and asked about unsolved murders dating back to a time prior to their family moving to the neighborhood.

46.     STEVEN explained that his family had moved into the area two weeks ago and didn't know anything about those murders.

47.     STEVEN and MICHAEL were subsequently taken back to the holding cell.

48.     At approximately 12:00 AM on the morning of July 23rd, PLAINTIFFS were transferred to Bronx Central Booking.

49.     At this time SAMUEL complained of a headache and asked to be taken to the hospital on several occasions.

50.     The officers responded by making fun of SAMUEL and calling him a "little girl," a "bitch," and a "pussy."

51.     After being processed at Central Booking, SAMUEL continued to complain about his headache.

52.     Eventually SAMUEL was taken to Lincoln hospital.

53.     When the officers transported SAMUEL from Central Booking to the hospital they stopped at a restaurant to purchase food for themselves.

54.     SAMUEL waited in the emergency room for approximately five hours without receiving treatment and was eventually taken back to Bronx Central Booking.

55.     At approximately 3:00 PM, PLAINTIFFS were arraigned and released on their own recognizance.

56.     PLAINTIFFS spent approximately 24 hours in custody.

57.     PLAINTIFFS were not read their *Miranda* rights the entire time they were in custody.

58.     PLAINTIFFS were required to make approximately four additional criminal court appearances before the baseless charges were dismissed and sealed in January 2016.

59.     PLAINTIFFS missed several days of work because of their arrest and subsequent court appearances.

60.     MICHAEL's work hours were significantly reduced after his employer discovered that he was arrested.

61.     As a result of the individual defendants' conduct, PLAINTIFFS sustained serious physical injuries that caused them substantial pain and suffering and required medical treatment.

62.     As a result of the individual defendants' conduct, PLAINTIFFS experienced loss of liberty, loss of income, humiliation and embarrassment and suffered – and continue to suffer – severe psychological and emotional distress.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Individual Defendant Officers' Violations of
### Plaintiff's Fourth and Fourteenth Amendment Rights

63.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

64.     In committing the acts and omissions complained of herein, defendants Detective DISIMONE, Detective MCHALE, and Officer DOES acted under color of state law to deprive PLAINTFFS of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

        a.   the right to be free from unreasonable search and seizure;

    b.  the right to be free from arrest without probable cause;

    c.  the right to be free from arrest without excessive force;

    d.  the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent; and

    e.  the right to be free from deprivation of liberty without due process of law.

65.    In committing the acts and omissions complained of herein, defendants Detective DISIMONE, Detective MCHALE, and Officer DOES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

66.    As a direct and proximate result of defendants Detective DISIMONE, Detective MCHALE, and Officer DOES deprivation of PLAINTIFFS' constitutional rights, plaintiffs suffered the injuries and damages set forth above.

67.    The unlawful conduct of defendants Detective DISIMONE, Detective MCHALE, and Officer DOES was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Violations of the New York State Constitution

68.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69.    Such conduct breached the protections guaranteed to PLAINTIFFS by the New York State Constitution, including but not limited to, Article 1, §§ 1, 11, and 12, and including the following rights:

    a.  freedom from unreasonable search and seizure of his person and property;

    b.  freedom from arrest without probable cause;

    c.   freedom from use of excessive force;

    d.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiff was aware and did not consent;

    e.   freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants; and

    f.   freedom from deprivation of liberty without due process of law.

70.    As a direct and proximate result of defendants' deprivations of PLAINTIFFS' rights, privileges, and immunities guaranteed by the New York State Constitution, they suffered the injuries and damages set forth above.

### THIRD CAUSE OF ACTION
**Assault and Battery**

71.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

72.    Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES, without just cause, wilfully and maliciously used physical force against PLAINTIFFS causing them injuries.

73.    Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES committed the foregoing acts intentionally, wilfully, and with malicious disregard for PLAINTIFFS' rights, and are therefore liable for punitive damages.

### FOURTH CAUSE OF ACTION
**False Imprisonment**

74.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

75.     Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES, through the foregoing acts, caused PLAINTIFFS to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention PLAINTIFFS was aware and to which he did not consent.

76.     Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

**FIFTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

77.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

78.     Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES, through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused PLAINTIFFS to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

79.     Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for PLAINTIFFS' rights and are therefore liable for punitive damages.

**SIXTH CAUSE OF ACTION**
**Negligence**

80.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

81.     Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES owed plaintiff a duty of care, including the duty to exercise due care in the course of their duties as

NYPD officers and the duty to protect citizens from the intentional misconduct of other NYPD officers.

82.     Defendants Detective DISIMONE, Detective MCHALE, and Officer DOES, through the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances.

83.     All of these acts were performed without any negligence on the part of PLAINTIFFS and were the proximate cause of the injuries to plaintiff.

## SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

84.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.     As police officers acting in the performance of their duties, defendants Detective DISIMONE, Detective MCHALE, and Officer DOES owed PLAINTIFFS a duty of care.

86.     In breach of that duty, defendants Detective DISIMONE, Detective MCHALE, and Officer DOES endangered PLAINTIFFS' safety and caused him to fear for his safety.

87.     As a result, plaintiff suffered emotional distress.

## EIGHTH CAUSE OF ACTION
### Malicious Prosecution

88.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

89.     A criminal proceeding was commenced against Plaintiffs in Bronx County Criminal Court.

90.     The proceeding was initiated based on false allegations by Detective DISIMONE included in the criminal complaint.

91.     The criminal proceeding was terminated in Plaintiffs' favor when the charges against them were dismissed.

92.     There was no probable cause for any of the charges brought against Plaintiffs.

93.     The Defendant DISIMONE committed the foregoing acts intentionally, willfully, and with malicious disregard for Plaintiffs' rights and are therefore liable for punitive damages.

94.     The City is vicariously liable for the conduct of the individual NYPD defendants as set forth herein.

## NINTH CAUSE OF ACTION
### Negligent Hiring, Training, and Supervision Under State Law;
### Defendant City of New York

95.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

96.     The City is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants, and/or employees employed and/or the NYPD with regard to their aforementioned duties.

## TENTH CAUSE OF ACTION
### *Respondeat Superior*

97.     Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     At all relevant times, defendants Detective DISIMONE, Detective MCHALE, and Officer DOES were employees of the City and were acting within the scope of their employment.

99.     The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendants Detective DISIMONE, Detective MCHALE, and Officer DOES set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and severally:

(a)     compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)     punitive damages from Detective DISIMONE, Detective MCHALE, and Officer DOES to the extent allowable by law;

(c)     attorney's fees;

(d)     the costs and disbursements of this action;

(e)     interest; and

(f)     such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        October 17, 2016

_____
Keith Szczepanski
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiffs Steven Serrano, Michael Serrano, and Samuel Garcia*