**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

STEVEN SERRANO, MICHAEL SERRANO, and
SAMUEL GARCIA,

                              Plaintiffs,

     -against-

THE CITY OF NEW YORK, a municipal entity; New
York City Police Detective ANTHONY DISIMONE
(Shield No. 000340) in his individual capacity; New York
City Police Detective THOMAS MCHALE (Shield No.
004937) in his individual capacity; U.C. 0244, in his
individual capacity; U.C. 0114, in his individual capacity;
and "JOHN and/or JANE DOES" 1, 2, 3, etc. (whose
identity are unknown but who are known to be personnel
of the New York City Police Department), all of whom are
sued in their individual capacities,

                              Defendants.

-------------------------------------------------------------------- X

**ORAL ARGUMENT**
**REQUESTED**

16-cv-8105-AKH

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiffs Steven Serrano,*
*Michael Serrano, and Samuel Garcia*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………iii

PRELIMINARY STATEMENT…………………………………………………………..,1

STATEMENT OF FACTS…………………………………………………………………..2

LEGAL STANDARD………………………………………………………………………5

ARGUMENT………………………………………………………………………………...

   I.     DEFENDANTS LACKED PROBABLE CAUSE TO ARREST PLAINTIFF………..6

       A.  Defendants Lacked Probable Cause to Arrest Plaintiffs for Obstructing Governmental Administration Because They Did Not Physically Interfere with Police Action………………………………………………………………………....8

       B.  Defendants Lacked Probable Cause to Arrest Plaintiffs for Criminal Facilitation Because They Had Did Not Interact with the Individuals Selling Drugs to Defendant UC114…………………………………………………………………..………10

       C.  Defendants Lacked Probable Cause to Arrest Plaintiffs for Criminal Sale of a Controlled Substance Because Plaintiffs Did Not Sell Drugs………………….....11

       D.  Defendants Recovery of Marijuana from Steven Serrano Was a Result of an Unlawful Search…………………………………………………………………...……11

       E.  Defendant Officers Did Not Observe or Have Any Reason to Believe that Steven Serrano and Samuel Garcia Were Smoking Marijuana on the Day of Their Arrest…...11

   II.    Defendants' Search Incident to Arrest Was Unlawful Because The Arrest Was Unlawful…………………………………………………………………..12

   III.   Defendants Used Excessive Force in Applying Handcuffs on Steven Serrano……….13

   IV.   Defendants Maliciously Prosecuted Plaintiffs…………………………………...14

   V.    STATE LAW ASSAULT AND BATTERY CHARGES RELATED TO STEVEN SERRANO'S INJURIES CANNOT BE DISMISSED…………………………..,15

   VI.   PLAINTIFFS' STATE LAW CLAIMS AGAINST THE CITY OF NEW YORK UNDER RESPONDEAT SUPERIOR SHOULD NOT BE DISMISSED…………..16

i

VII.      DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY…………..17

CONCLUSION……………………………………………………………………………..19

# TABLE OF AUTHORITIES

## CASES

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012)…………………………….…..16

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)…………………………………………………..5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………………………5, 6

*Aristide v. City of New York*, . 2017 U.S. Dist. LEXIS 197131 (E.D.N.Y. Nov. 30, 2017)………9

*Blissett v. Coughlin*, 66 F.3d 531 (2d Cir. 1995)……………………………………………..…17

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)……………………………….………15

*Broughton v. State*, 37 N.Y.2d 451 (1975)…………………………………………….………6

*Charkhy v. Altman*, 252 A.D.2d 413 (1st Dep't' App. Div. 1998)……………………...……15

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003……………………………………...……7

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010)…………………………………….……..6

*Doe v. Gunthrie Clinic, Ltd.*, 710 F.3d 492 (2d Cir. 2013)……………………….………...16

*Esmont v. City of New New York*, 371 F. Supp. 2d 202 (E.D.N.Y 2005)………………………..13

*Evans v. City of New York*, 2015 U.S. Dist. LEXIS 38546 (E.D.N.Y. Feb. 24, 2015)………....8

*Gannon v. City of New York*, 917 F. Supp. 2d 241 (S.D.N.Y. 2013)……………………...……13

*Garcia v. Does*, 779 F.3d 84 (2d Cir. 2014)……………………………………………………..17

*Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002)……………………………………...…………..5

*Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006)…………………………………………15

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007)……………………………………………..5

*Hatcher v. City of New York*, 2018 U.S. Dist. LEXIS 50759 (S.D.N.Y. Mar. 27, 2018)………..13

*Haynes v. Perotta*, 751 F. Supp. 2d 597 (S.D.N.Y. 2010)……………………………………13

*Hinderbrant v. City of New York*, 13-cv-1955 (ARR) (VVP) 2014 U.S. Dist. LEXIS 128170, 2014 WL 4536736 (E.D.N.Y. Sept. 11, 2014)……………………………………………..9

iii

*Howard v. Schoberle*, 907 F.Supp. 671 (S.D.N.Y. 1995)…………………………………...……6

*Hunter v. Harvey*, 95 N.Y.2d 191 (2000)……………………………………………….……14

*In re Devan L.*, 91 N.Y.2d 88 (1997)……………………………………………………...9

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006)………………………………...………………12

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007)……………………………….………17

*Kass v. City of New York*, 864 F.3d 200 (2d Cir. 2017)…………………………………………9

*Lawson v. N.Y. Billiards Corp.*, 331 F. Supp. 2d 121 (E.D.N.Y. 2004)……………………....14

*Loftin v. City of New York*, 2017 U.S. Dist. LEXIS 133674 (E.D.N.Y. Aug. 21, 2017)…….15, 16

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009)…………………….….5

*Mesa v. City of New York*, 2013 U.S. Dist. LEXUS 1097, 2013 WL 31002 (S.D.N.Y. Jan. 3, 2013)…………………………………………………………………………………………16

*Moore v. Comesanas*, 32 F.3d 670 (2d Cir. 1994)……………………………………...……7

*Murphy v. Neuberger*, 1996 U.S. Dist. LEXIS 11164 (S.D.N.Y. Aug. 5, 1996)…………….…12

*People v. Lopez*, 97 Misc. 2d 124 (N.Y.C. Crim Ct. Nov. 27, 1978)……………………….…7

*Peterson v. County of Nassau*, 995 F. Supp. 305 (E.D.N.Y. 1998)……………………….……6

*Ricciuti v. New York City Transit Authority*, 124 F.3d 123 (2d Cir. 1997)……………………6, 7

*Rivera v. Rochester Genesee Reg. Transp. Auth.*, 702 F.3d 685 (2d Cir. 2012)…………………5

*Robbins v. Robbins*, 133 NY 597 (1892)………………………………………….……14

*Robinson v. Via*, 821 F.2d 913 (2d Cir. 1987)……………………………………...………18

*Rucks v. City of New York*, 96 F. Supp. 3d 138 (S.D.N.Y. 2015)……………………...………15

*Russell v. Smith*, 68 F.3d 33 (2d Cir. 1995)…………………………………………...………14

*Sacs v. Cantwell*, No. 10-cv-1663, 2012 U.S. Dist. LEXIS 125335, 2012 WL 3822220 (S.D.N.Y. Sept. 4, 2012)…………………………………………………………………13

*Savino v. City of New York*, 331 F. 3d 63 (2d Cir. 2003)…………………………...……6

*Stansbury v. Wertman*, 721 F.3d 84 (2d Cir. 2013)……………………………………...………17

*Terry v. Ohio*, 392 U.S. 1 (1968)…………………………………………………….………..11

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014)…………………………………………………..5

*Usavage v. Port Auth. Of N.Y. & N.J.,* 932 F. Supp. 2d 575 (S.D.N.Y. 2013)……………….…13

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996)……………………………………….…….7

*Wood v. Town of E. Hampton*, 08-cv-4197, 2014 U.S. Dist. LEXIS 1654 (E.D.N.Y. Jan. 7, 2014)..................................................................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs Steven Serrano, Michael Serrano, and Samuel Garcia, by their attorneys, Beldock Levine & Hoffman LLP, respectfully submit this Memorandum of Law in opposition to defendant's motion for summary judgment pursuant to Rule 56 of the Fed. R. Civ. P.[1]

Steven and Michael Serrano and Samuel Garcia, life-long Bronx residents were unlawfully arrested, falsely imprisoned, and maliciously prosecuted for doing nothing more than standing outside their apartment and conversing amongst themselves on a warm summer afternoon. Equally unsettling, following plaintiffs' arrest, they were driven around the Bronx, while handcuffed, in the back of an NYPD van for approximately three hours, until defendant officers filled every seat in the van.

Because there are multiple issues of material fact, defendants' request for summary judgment should be denied. The record shows there is a dispute as to whether Steven or Michael Serrano said to "JD Red" an individual allegedly engaged in drug sales, that UC244 and his female partner were undercover police officers. Plaintiffs' claim that Steven made this comment only to Samuel Garcia, during the course of a 30 minute conversation. It is plaintiffs' position that Michael was not present when his brother made the comment to Samuel about UC244.

Defendants' position is complicated by the fact that UC244's Report and the Criminal Complaint written by defendant DiSimone have two different plaintiffs making essentially the same statement to "JD Red." *See* Defs' Ex. C, "JD Grey [Steven Serrano] then signal [sic] JD Red, don't do anything he's a cop." *Compare* with Defs' Ex. A, "[D]efendant MICHAEL SERRANO and defendant GARCIA both pointed at informant #2 and stated in sum and substance, THAT

---

[1] Plaintiffs have decided not to press forward with the following: Fourteenth Amendment claims, Fourth Amendment failure to intervene claims, state law negligent hiring, training, and supervision claims, and Samuel Garcia's state law claims. Plaintiffs' decision not to move forward does not concede the merit of these claims.

GUY IS A COP. Deponent is further informed by informant #2 that defendant SERRANO stated to defendant [redacted] in sum and substance, HE'S A COP." These are contradictory statements that defendants ignore in the memorandum in support of their memorandum. Additionally, both of these statements are false.

Viewing the evidence in the light most favorable to plaintiffs, there are several issues of material fact that should to be presented to a jury. Defendants' misguided attempt to justify plaintiffs' arrest, false imprisonment, and malicious prosecution cannot be sustained based on the record here. Plaintiffs were doing nothing more than talking in front of their apartment on a warm summer afternoon. They were not engaged in any criminal conduct. Thus, for these reasons and the reasons presented below, the Court should deny defendants request for summary judgment and allow plaintiffs' claims to go to trial.

## STATEMENT OF FACTS

On the afternoon of July 22, 2015, Steven Serrano was leaving his Bronx Park South apartment when he ran into Samuel Garcia. Pl.'s 56.1 at ¶ 2.[2] Steven and his family had recently moved to the area and he just discovered that Samuel lived in the same apartment building. *Id.* at ¶ 1. They proceeded to talk for the next half hour. *Id*. at ¶ 4. At one point, Steven's brother, Michael Serrano, come home after running errands and briefly spoke with Steven and Samuel before going into the family's apartment. *Id*. at ¶ 5.

As Steven and Samuel were talking, Steven noticed two individuals, a male and female, running up and down the street in front of plaintiffs' apartment building. *Id*. at ¶ 6. At one point,

---

[2] As used herein, "Defs.' 56.1" refers to Defendants' Local Rule 56.1 Statement of Undisputed Fact; "Defs.' Mot." refers to Defendants' Memo. of Law in Support of their Motion for Summary Judgment; "Pl.'s 56.1" refers to Plaintiff's Response to Defendants' Local Rule 56.1 Statement and Statement of Additional Material Facts; and "Szczepanski Decl." refers to the April 13, 2018 Declaration of Keith Szczepanski in Opposition to Defendants' Motion for Summary Judgment, to which the exhibits referenced herein are attached.

Steven commented to Samuel, those are cops, in reference to a male and female. *Id*. at ¶ 12; Defs'
56.1 at ¶ 6-7. Samuel either agreed with or was indifferent to Steven's statement. *Id*. at ¶ 8.
Unbeknownst to plaintiffs, there was an NYPD buy and bust operation going on in the area around
their apartment. *Id*. at ¶ 1. Undercover officers were attempting to purchase drugs from people in
the area, so they could make arrests and question local residents about a shooting that had recently
occurred at a public housing complex nearby. Pl.'s 56.1 at ¶ 7-8. Plaintiffs were not the targets of
the buy and bust operation. *Id*. at ¶ 9.

As Steven and Samuel continued to talk outside their apartment, they were rushed by
approximately five plainclothes NYPD officers. *Id*. at ¶ 15. The officers ordered Steven and
Samuel not to move. *Id*. Steven and Samuel complied with the officers' orders and were told that
they were under arrest. *Id*. at ¶ 16. At approximately this time, Michael Serrano, who was inside
the family's apartment, heard his brother yelling outside and grew concerned for his safety. *Id*. at
¶ 22-23, 30. As Michael ran outside, he was grabbed by a defendant officer and thrown against the
wall. *Id*. at ¶ 31. Plaintiffs had no idea why they were being arrested. *Id*. at ¶ 32. As defendant
officers conducted searches of plaintiffs, Steven stated to defendant McHale that he had marijuana
in his pocket. *Id*. at ¶ 32. Defendant McHale removed a joint from Steven's pants' pocket. Defs'
56.1 at ¶ 5.

As defendant officers were handcuffing plaintiffs, Michael asked why he was being
arrested. Defendant officers stated "you know what you did." Pl.'s 56.1 at ¶ 34. He did not. *Id*. at
¶ 32. Neither did Steven or Samuel. *Id*. Because of his size, defendant officers used two sets of
handcuffs on Michael. *Id*. at ¶ 24. Seeing that defendant officers used two sets of handcuffs on his
brother, Steven requested that the officers use two sets of handcuffs on him as well because of his

wide shoulders. *Id.* Defendant officers did not use two sets of handcuffs on Steven. *Id.* at ¶ 25. Plaintiffs were subsequently loaded into the back of a NYPD van. *Id.* at ¶ 28.

The van did not immediately take plaintiffs to the local NYPD precinct. *Id.* at ¶ 28. Instead, plaintiffs were driven around the Bronx for approximately three hours, handcuffed the entire time. *Id.* Steven repeatedly complained to defendant officers that his handcuffs were too tight and that he wanted to be double cuffed. *Id.* at ¶ 25-26. Approximately 30 minutes after being handcuffed, defendant officers loosened Steven's handcuffs. Defs' 56.1 at ¶ 20. However, he had already experience cuts to his wrists and continued to feel great pain even after the handcuffs were loosened. *Id.* at ¶ 21.

Plaintiffs were eventually brought to the precinct, where they were processed and placed in a holding cell. Pl.'s 56.1 at ¶ 35. Steven and Michael were brought separately into a private room and questioned by a detective about murders that had taken place around the area they were arrested. *Id.* at ¶ 29. Steven and Michael explained that they did not know about any murders. *Id.*

At the precinct, plaintiffs discovered that they were being charged with Criminal Sale of heroin, in violation of NYPL 220.39(1), Criminal Possession of heroin, in violation of NYPL 220.16(1), and Criminal Possession of marijuana, in violation of NYPL 220.03. *Id.* at ¶ 36. Plaintiffs did not possess heroin and were not involved in a drug sale. *Id.* at ¶ Only Steven was in possession of marijuana, but defendant McHale recovered the small amount Steven had in his pocket during the search incident to his unlawful arrest. Defs' 56.1 at ¶ 17. The criminal complaint alleges that, prior to their arrest, Samuel and Michael pointed to an undercover officer and said "he's a cop." Defs' Ex. A. This allegation is patently false, as it was Steven who said to Samuel, and only Samuel, that he believed the male and female running up and down the block were police officers. Defs' 56.1 at ¶ 6. Michael was not present when Steven made this statement. Pl.'s 56.1 at

¶ 11. The criminal complaint also falsely alleges that Michael told a non-plaintiff co-defendant that undercover police officers were present in the area. Defs' Ex. A. This allegation is contradicted by a report authored by UC224, which claims that Steven told "JD Red" not to do anything because UC224 is a cop. Pls' Ex. 7.

At approximately 9 pm, plaintiffs were transported to Bronx Central Booking and they were arraigned the following day, July 23, 2015. Pl.'s 56.1 at ¶ 37. After approximately four court appearances, the baseless charges against plaintiffs were dismissed. Defs' 56.1 at ¶ 25-26.

## <u>LEGAL STANDARD</u>

Summary judgment is proper only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  That is, the moving party bears the burden to show the absence of a genuine dispute of any material fact. *Id.*; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "'A genuine issue exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Rivera v. Rochester Genesee Reg. Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

In determining whether a genuine dispute exists, the Court must "'constru[e] all the evidence in the light most favorable to the non-movant and draw[] all reasonable inferences in [her] favor.'" *Id.* (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)). The same is true when considering the defense of qualified immunity. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (discussing "the axiom that in ruling on a motion for summary

judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" (quoting *Anderson v*, 477 U.S. at 255 (1986)). "[U]nder either prong [of the qualified immunity analysis], courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* at 1866.

## ARGUMENT

### I.    DEFENDANTS LACKED PROBABLE CAUSE TO ARREST PLAINTIFFS

Plaintiff's false arrest claim must survive summary judgment. To state a claim for false arrest, plaintiffs must show: (1) that they were conscious of their confinement; (2) that they did not consent to the confinement; (3) that defendants intended the confinement; and (4) that the confinement was not otherwise privileged. *Savino v. City of New York*, 331 F. 3d 63, 75 (2d Cir. 2003). Here, the only contested element is whether plaintiffs' confinement was privileged.

"Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). "[A] warrantless arrest is illegal under New York law if the police do not have 'reasonable cause' to believe that the arrestee has committed a crime." *Howard v. Schoberle*, 907 F.Supp. 671, 677 (S.D.N.Y. 1995) (citing N.Y. Crim Proc. § 140.10(1)(b)). "When an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975). In evaluating the existence of probable cause, courts only "consider the facts available to the officers at the time of the arrest." *Ricciuti* v. *New York City Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997).

When the question of whether an arresting officer had probable cause is "predominantly factual in nature"—as it is in the case at bar—the question "[i]s properly presented to the jury." *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (summary judgment improper where a factual "dispute [exists] as to the pertinent events and the knowledge of the officers"). "[C]redibility assessments, choices between conflicting versions of the events, and the weighing of the evidence are matters for the jury, not for the court on a motion for summary judgment." *Curry v. City of Syracuse*, 316 F.3d 324,333 (2d Cir. 2003). *See also Weyant*, 101 F.3d at 855 ("The weighing of the evidence and the determination as to which version of the events to accept are matters for the jury."). It is proper to deny summary judgment where, like here, there is a material question of fact as to whether defendant officers falsified information regarding an arrest. *Ricciuti*, 124 F.3d at 129-30.

As a preliminary matter, Michael Serrano was not present when Steven commented to Samuel that he believed the male and female running up and down the street were undercover police officers. Defendants do not claim that any plaintiffs interacted with the individual identified as "JD White." Defendants also do not claim that Samuel Garcia in any way interacted with the individual identified as "JD Red." Defendants' entire probable cause argument rests on a contested issue of fact: whether Steven Serrano identified UC244 and his female partner to "JD Red."

Steven Serrano did not speak with anyone other than Samuel Garcia regarding who he believed to be undercover police officers, UC244 and his female partner. However, even if Steven, or for that matter, any plaintiff, told "JD Red" that UC244 was an undercover cop, this statement, by itself, is not a criminal act. *See People v. Lopez*, 97 Misc. 2d 124, 125 (N.Y.C. Crim Ct. Nov. 27, 1978) ("[I]f the People were engaged in an undercover sale of drugs and it could be shown that the seller refused to go through with the sale by reason of his recognition of or his information that

the buyer is an officer, can it seriously be contended that the prospective seller and/or his informant obstructed governmental administration? I think not."). Therefore, taking plaintiffs' version of the facts as true, the Court should deny defendants request for summary judgment on the false arrest claims because plaintiffs did not engage in any unlawful activities.

Defendants propose several criminal offenses in which plaintiffs could have been charged with to support their argument that there was probable cause for their arrest. However, as argued below, defendants after the fact allegations against plaintiffs would have met the same fate as the baseless allegations that were brought against them on July 22, 2015: dismissal based on a lack of probable cause. Indeed, the fallacies in defendants argument about potential crimes in which plaintiffs could have been charged with is evidenced by the lack of case law to support any claim except obstructing governmental administration. However, even defendants obstructing governmental administration allegation fails because there was no obstruction. Defendants' throw out numerous criminal scenarios, hoping that the Court finds one that sticks. Plaintiffs respectfully asks the Court not to entertain in defendants arguments and reject their request for summary judgment on plaintiffs' false arrest claims.

**A. Defendants Lacked Probable Cause to Arrest Plaintiffs for Obstructing Governmental Administration Because They Did Not Physically Interfere with Police Action**

Defendants argue that Steven Serrano, Michael Serrano, and Samuel Garcia could have been charged with obstructing governmental administration ("OGA") in violation of NYPL § 195.05. However, defendants' argument fails because plaintiffs did not physically interfere with a police action. *See Evans v. City of New York*, 2015 U.S. Dist. LEXIS 38546 at * 100 (E.D.N.Y. Feb. 24, 2015) ("courts have made clear that [OGA] requires physical interference with police

action.") (quoting *Hinderbrant v. City of New York*, 13-cv-1955 (ARR) (VVP) 2014 U.S. Dist. LEXIS 128170, 2014 WL 4536736, at * 3 (E.D.N.Y. Sept. 11, 2014).[3]

Unlike here, each case defendants rely upon to support their argument that probable cause was present to arrest plaintiff for OGA, uniformed officers were involved in obvious police activity In *In re Devan L.*, 91 N.Y.2d 88 (1997), New York's Court of Appeals found that Devan L. had "intentionally intruded himself into the specific area of police activity" and "caused a physical reaction and dispersal." *Id.* at 92. Here, plaintiffs had no idea that the NYPD were engaged in a buy and bust operation, they stood in the same general area for approximately 30 minutes and did not cause a dispersal of any kind, and plaintiffs did not engage in a single act that physically interfered with defendants' undercover buy and bust operation. Indeed, UC 114 was able to purchase heroin from "JD White."

Defendants' reliance on *Kass v. City of New York* is similarly misguided. 864 F.3d 200 (2d Cir. 2017) (Defs' Memo at 9). The officers in *Kass*, were in uniform, they gave plaintiff an order to move, plaintiff ignored the order, and he was arrested. *Id.* at 207. Here, plaintiffs did not know for sure whether UC244 was actually an undercover officer, plaintiffs did not receive an order from police officers, and plaintiffs did not disobey a lawful order from a law enforcement officer.

Finally, *Aristide v. City of New York*, is also distinguishable for the facts of his case. 2017 U.S. Dist. LEXIS 197131 (E.D.N.Y. Nov. 30, 2017) Defs' Memo. at XX. In *Aristide*, plaintiff's friend was arrested for selling a marijuana to a male and female, whom plaintiff later accused of being undercover police officers, at a house party. *Id.* at * 2. After his friends' arrest, plaintiff

---

[3] Even if Steven Serrano did say to "JD Red" that UC244 was an undercover officer, which he did not, this is still not an unlawful act. See *Wood v. Town of E. Hampton*, 08-cv-4197, 2014 U.S. Dist. LEXIS 1654 at * 20-28 (E.D.N.Y. Jan. 7, 2014) (denying summary judgment on false arrest claim where plaintiff warned two individuals standing on a public sidewalk, one of whom was an undercover police officer engaged in a narcotics operation, that the police were out.); See also, *People v. Lopez*, 97 Misc. 2d at 125 (No statutory violating when defendant repeatedly shouted that a plainclothes anti-crime patrolman was a police officer, even though he blew the officer's cover and disrupted his surveillance operation).

walked outside and noticed that the couple who had purchased the marijuana had not been arrested. *Id*. Plaintiff confronted the couple and was approached by a uniformed officer who told him to leave the area. *Id*. After plaintiff left the area, he again encountered the couple who bought marijuana from his friend and accused them of being undercover cops. *Id*. Plaintiff was arrested, but released from custody before being formally charged. *Id*. at * 3. Here, plaintiffs' were not approached by any police officers and were not given an order to leave the area.

Therefore, defendant officers lacked probable cause to arrest plaintiffs for OGA, defendants' request for summary judgment should be denied.

### B. Defendants Lacked Probable Cause to Arrest Plaintiffs for Criminal Facilitation Because They Had Did Not Interact with the Individuals Selling Drugs to Defendant UC114

Defendants also argue that Steven Serrano and Samuel Garcia could have been charged with criminal facilitation in the fourth degree in violation of NYPL 115.00(1).[4] A person commits the crime of criminal facilitation in the fourth degree "when believing it probable that he is rendering aid . . . to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony." NYPL 115.00(1).

This argument fails because plaintiffs did not interact with "JD Red" or "JD White" nor did they know that a drug sale was taking place near their apartment. There is no way that Steven Serrano or Samuel Garcia could have rendered aid to the criminal activities of "JD Red" or "JD White" simply because they were standing in the same general area as an alleged drug sale. Indeed, UC114 was able to complete the drug sale with "JD White" in a laundromat around the corner

---

[4] Defendants do not allege that Michael Serrano engaged in criminal facilitation in the fourth degree, presumably because defendants concede that he was inside his family's apartment at all times relevant to the events leading up to his arrest.

from plaintiff's apartment. Thus, it is incredible to believe that Steven and Samuel facilitated a drug sale. Therefore, the Court should reject defendants' argument that Steven Serrano and Samuel Garcia could have been arrested for criminal facilitation.

### C. Defendants Lacked Probable Cause to Arrest Plaintiffs for Criminal Sale of a Controlled Substance Because Plaintiffs Did Not Sell Drugs

Defendants' argument that there was probable cause to support Steven Serrano for criminal sale of a controlled substance lacks merit. Defs' Memo. at 8-9. As argued above, the statement that Steven Serrano made to Samuel Garcia, that he believed there were undercover officers operating on Bronx Park South, could not rise to a level of OGA, let alone criminal sale of a controlled substance. Nowhere in the record is there any evidence to even remotely support defendants' claim that Steven was selling drugs. Thus, the Court should reject defendants' baseless argument that Steven Serrano could have been charged with criminal sale of a controlled substance.

### D. Defendants Recovery of Marijuana from Steven Serrano Was a Result of an Unlawful Search

The "Constitution forbids . . . not all searches and seizures, but unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). As argued in Sections I and II *supra*, when analyzing the facts in a light most favorable to plaintiffs, defendant officers lack probable cause to arrest plaintiffs. Thus, defendants' recovery of marijuana from plaintiff Steven Serrano was the result of an unlawful search. Because defendants did not have probable cause to search Steven Serrano, their discovery of the marijuana in his pocket is a product of an illegal search and cannot be a lawful basis for his arrest.

### E. Defendant Officers Did Not Observe or Have Any Reason to Believe that Steven Serrano and Samuel Garcia Were Smoking Marijuana on the Day of Their Arrest

Steven Serrano and Samuel Garcia were not observed smoking marijuana. Nowhere in the criminal complaint, nor in any of the defendant officers' deposition testimony, do they claim to

11

have observed Steven Serrano or Samuel Garcia smoking marijuana. None of the defendant officers testified to seeing Mr. Serrano or Mr. Garcia smoking marijuana prior to arresting them. Nothing in UC244's report, Defs' Ex. C, references Mr. Serrano or Mr. Garcia smoking marijuana. In fact, the only reference to marijuana in the criminal matter against plaintiffs comes in the criminal complaint and clearly states that defendant McHale observed "STEVEN SERRANO to have on his person, in his right, front pants pocket one (1) burnt cigarette containing a fried leafy substance with a distinct odor" nowhere is it alleged that Steven Serrano or Samuel Garcia were observed smoking marijuana.[5] *See Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) ("[T]he probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest."). Defendants did not know that Steven and Samuel had smoked marijuana. Thus, they could not be arrest for smoking marijuana.

Therefore, because there is not a single criminal act giving defendant officers probable cause to arrest plaintiffs, the court should deny defendants request for summary judgment on plaintiffs' false arrest claim.

## II. Defendants' Search Incident to Arrest Was Unlawful Because The Arrest Was Unlawful

Because defendants lacked probable cause to arrest plaintiffs, the search incident to their arrest is unlawful. *See Murphy v. Neuberger*, 1996 U.S. Dist. LEXIS 11164 at * 22 (S.D.N.Y. Aug. 5, 1996) ("Because an arrest must be 'lawful' in order to justify any search incident to arrest, plaintiff also states a claim for the alleged unlawful search and seizure of his papers and effects as prohibited by Fourth Amendment.").

---

[5] The fact that plaintiffs' were not charged under N.Y.P.L 221.10, which is the criminal charge for "burning" or publically possessing marijuana, strengthens their argument that defendants did not observe them smoking marijuana. Instead, they were charged with a lessor crime because the marijuana was not in public view.

Consequentially, the marijuana found in Steven's pocket cannot be used as a basis to support his arrest because it was the result of an unlawful search. *See Hatcher v. City of New York*, 2018 U.S. Dist. LEXIS 50759 at * 22 (S.D.N.Y. Mar. 27, 2018) ("Under *Townes*, 'recovery for injuries that directly result from an unlawful search is permissible.'") (quoting *Haynes v. Perotta*, 751 F. Supp. 2d 597, 603 (S.D.N.Y. 2010)); *see also Gannon v. City of New York*, 917 F. Supp. 2d 241, 244 (S.D.N.Y. 2013) ("I note that under *Townes*, damages related to the initial search and seizure would be possible." (internal quotation marks omitted)). Therefore, all plaintiffs state a claim for unlawful search and seizure, and the marijuana found on Steven cannot be used to support probable cause for his arrest. Thus, defendant request for summary judgment on plaintiffs' unlawful search and seizure claims should be denied.

### III.    Defendants Used Excessive Force in Applying Handcuffs on Steven Serrano

"Courts apply a spate standard to claims for excessive force in the use of handcuffs." *Sacs v. Cantwell*, No. 10-cv-1663, 2012 U.S. Dist. LEXIS 125335, 2012 WL 3822220, at * 14 (S.D.N.Y. Sept. 4, 2012). "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: (1) the handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Esmont v. City of New New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y 2005). "[T]his inquiry must reflect the totality of the circumstances, including any facts that bear on whether use of an unusual degree of force may have been justified." *Usavage v. Port Auth. Of N.Y. & N.J.,* 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013).

Here, defendants used excessive force in handcuffing Steven Serrano. Prior to being handcuffed, Steven requested that defendant officers use two sets of handcuffs because of his broad shoulders. Steven's request was ignored by defendant officers. As a result Steven experienced pain

in his arms and wrists. Steven complained to officers immediately after the handcuffs were applied that they were too tight. Indeed, the handcuffs were cutting into Steven's wrists. Steven complained to defendant officers about the pain in his wrists for approximately a 30 minutes before they loosened his handcuffs. During that time, and after his handcuffs were loosened, Steven experienced great pain in his hands and wrists.

Defendants argue that because Steven experienced *de minimis* injuries, summary judgment should be granted on his excessive force claim. However, this is a question of fact that is best left for a jury to determine.

Thus, because defendants used excessive force in their application of handcuffs on Steven Serrano, their request for summary judgment on Steven's excessive force claim should be denied.

## IV.    Defendants Maliciously Prosecuted Plaintiffs

"A cause of action for malicious prosecution in New York has four elements: '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Lawson v. N.Y. Billiards Corp*., 331 F. Supp. 2d 121, 129 (E.D.N.Y. 2004) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). Under New York law, "a criminal proceeding is terminated favorably to the accused when there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense." *Hunter v. Harvey*, 95 N.Y.2d 191, 196 (2000) (quoting *Robbins v. Robbins*, 133 NY 597, 599 (1892)).

Here, the only contested elements to plaintiffs' malicious prosecution claim is whether there was probable cause to support their arrest and whether defendant officers acted with malice. Defs' Memo. At 18-19. For the reasons presented in Section I, *supra*, defendants lacked probable

cause to arrest plaintiffs. Because defendants lacked probable cause to arrest plaintiffs, *see Section II, supra*, the element establishing malice is met. *See Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) (finding "lack of probable cause generally creates an inference of malice.").

Defendants argue that because there was probable cause to arrest plaintiffs, their malicious prosecution claims fail and that plaintiffs cannot prove malice on the part of defendants. However, defendants fail to make a substantive argument to support their position. When taking the facts in a light most favorable to plaintiffs, defendants lacked probable cause to arrest plaintiffs. Therefore, the court should find that defendants maliciously prosecuted plaintiffs and deny defendants request for summary judgment.

## V.   STATE LAW ASSAULT AND BATTERY CHARGES RELATED TO STEVEN SERRANO'S INJURIES CANNOT BE DISMISSED

Under New York law, "assault is an intentional placing of another person in fear of imminent harmful or offensive contract" and a "battery is an intentional wrongful physical contract with another person without consent." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (citing *Charkhy v. Altman*, 252 A.D.2d 413 (1st Dep't' App. Div. 1998). "If an officer lacks probable cause for an arrest, any force used by the officer in effectuating the unlawful arrest constitutes assault and battery." *Loftin v. City of New York*, 2017 U.S. Dist. LEXIS 133674 * 20-21 (E.D.N.Y. Aug. 21, 2017). *See also Rucks v. City of New York*, 96 F. Supp. 3d 138, 153 (S.D.N.Y. 2015) ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force used would be deemed reasonable if applied to a lawful arrest. In fact, where an arrest is unlawful and without consent, the use of force in an arrest *must* give rise to a claim for assault and battery."). (citations omitted).

Here, as argued in Section I, *supra*, defendants lacked probable cause to arrest Steven Serrano. Thus, any force used against Steven constitutes assault and battery. *See Loftin*, *supra*.

Defendant officers ignored Steven Serrano's request to be double handcuffed. As a result, he experienced extreme pain in his hands and wrists as he was driven around in the back of an NYPD van, handcuffed, for approximately three hours following his arrest. Additionally, defendant officers applied the single set of handcuffs so tightly upon Steven Serrano's wrists that he experienced cuts and physical pain as a result. Therefore, because Steven Serrano's arrest was not supported by probable cause and defendant officers used force him un effectuating the unlawful arrest, Steven Serrano's assault and battery claims should not be dismissed.

Defendants argue that "because any intentional contact with plaintiffs was made only in connection with a lawful arrest, plaintiffs' assault and battery claims should be dismissed." Defs' Memo at 21. However, for the reasons argued in Section I, *supra*, plaintiffs' arrest was unlawful. As a result, when taking the facts in light most favorable to plaintiffs, the Court should deny defendants' request for summary judgment on Steven Serrano's assault and battery claim because his arrest was unlawful.

## VI.   PLAINTIFFS' STATE LAW CLAIMS AGAINST THE CITY OF NEW YORK UNDER RESPONDEAT SUPERIOR SHOULD NOT BE DISMISSED

"Under New York common law doctrine of *respondeat superior*, an employer may be held liable for the actions of an employee if the employee's actions were foreseeable and within the scope of employment." *Loftin*, 2017 U.S. Dist. LEXIS 133674 at * 37 (citing *Doe v. Gunthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir. 2013)). "The doctrine of *respondeat superior* has been extended to cities and police departments, allowing them to be held liable for unconstitutional actions taken by police officers." *Id*. (citing *Ackerson v. City of White Plains*, 702 F.3d 15, 22 (2d Cir. 2012)). *See also*, *Mesa v. City of New York*, 2013 U.S. Dist. LEXUS 1097 at * 103, 2013 WL 31002 (S.D.N.Y. Jan. 3, 2013) ("under New York state law, municipalities can face liability for claims such as false arrest, assault, and battery under a theory of respondeat superior . . .

16

Accordingly, where plaintiffs' state law claims survive, so too do their respondeat superior claims against the City.").

For the reasons argued in Sections I, *supra*, plaintiffs' state law claims against defendant officers for false arrest, malicious prosecution, and assault and battery should survive defendants' motion for summary judgment. Therefore, plaintiffs' *respondeat superior* claims against the City of New York should not be dismissed.

## VII.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants' argument that they are entitled to qualified immunity because there was "arguable probable cause" conflates "arguable" with "almost." The Second Circuit has repeatedly admonished that "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).

> The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed. There should be no doubt that probable cause remains the relevant standard. If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.

*Id.* (citations omitted).

It is Defendants' burden to "prov[e] the affirmative defense of qualified immunity." *Blissett v. Coughlin*, 66 F.3d 531, 539 (2d Cir. 1995); *see also Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014). "Review for probable cause should encompass plainly exculpatory evidence alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (internal quotation marks and citations omitted). "A story is never a single chapter, it is the experience of the entire tale; the same is true of probable cause." *Id.*

17

At the time of incident giving rise to plaintiff's claims, defendant's need for probable cause to effect an arrest was clearly established. *See e.g.*, *Robinson v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) ("[I]t has long been clearly established that an arrest without probable cause is a constitutional violation."). Thus, defendants' argument that their conduct did not violate clearly established law is without merit. Defs' Memo at 24-26.

Defendants' claims that defendants had "arguable probable cause" lack merit. First, defendants claim that it was objectively reasonable to arrest Steven Serrano and Samuel Garcia for smoking marijuana. Defs' Memo at 26. This argument ignores the undisputed fact that defendant officers did not observe Steven or Samuel smoking marijuana. Thus, defendants could not have "arguable probable cause" to arrest Steven and Samuel for an act they did not know occurred.

Next, defendants' argue that they had arguable probable cause to arrest Steven Serrano because he was in possession of marijuana. Defs' Memo at 26. However, this argument is problematic for two reasons. First, Michael Serrano and Samuel Garcia were not in possession of marijuana. As a result, this argument fails as to these plaintiffs. Second, defendant officers found the marijuana on Steven Serrano through a search incident to an unlawful arrest. Thus, because defendant officers lacked probable cause to arrest Steven in the first place, qualified immunity should be unavailable to defendants for the marijuana found as a result of an unlawful search.

Defendants argue that it was objectively reasonable for defendants to arrest Steven Serrano for saying that he believed two individuals suspiciously running up and down the street were undercover police officers. Defendants also argue that because Samuel Garcia was standing next to Steven when he made this comment, defendants argue his arrest was lawful. As argued above, the conduct of Steven and Samuel does not raise to the low level of OGA, let alone a more serious criminal offense. *See* Section I, *supra*. Thus, because neither Steven nor Samuel committed an

18

unlawful act by speculating as to whether people running up and down their street were undercover officers, defendants lack arguable probable cause to arrest them.

Incredibly, defendants argue that Michael Serrano's arrest was objectively reasonable because he spoke to his brother Steven and Samuel, outside of their apartment, when an undercover buy and bust operation was taking place. Defs' Memo at 26. Ignoring the deposition testimony of each plaintiff, defendants conclude "there was at least 'arguable probable cause' that all three plaintiffs were involved in the drug transaction by acting as look-outs or otherwise" Defs' Memo at 26. This argument lacks any basis on the record before the Court. As a result, the Court should deny defendants' request for summary judgment on qualified immunity grounds because they plaintiffs' clearly established constitutional rights and lacked arguable probable cause to support the arrest.

## CONCLUSION

For the foregoing reasons, and based on the matters set forth in the accompanying declarations and exhibits, Plaintiff's Rule 56.1 Counter Statement, and all of the prior proceedings and records in this case, the Court should deny Defendants' motion for summary judgment and allow the case to proceed to trial.

Dated: April 13, 2018
     New York, New York

     BELDOCK LEVINE & HOFFMAN LLP
     99 Park Avenue, PH/26th Floor
     New York, New York 10016
     (212) 490-0400

     /s/

     _____

     Keith Szczepanski