USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/12/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

STEVEN SERRANO, MICHAEL SERRANO, and
SAMUEL GARCIA,

       Plaintiffs,

 -against-

CITY OF NEW YORK, et al.,

       Defendants.

------------------------------------------------------- X

**OPINION AND ORDER
GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

16 Civ. 8105 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

   This case concerns the allegedly unlawful arrest and subsequent prosecution of three individuals outside a Bronx apartment building. Plaintiffs Steven Serrano, Michael Serrano, and Samuel Garcia (collectively, "Plaintiffs") filed this action on October 17, 2016. Broadly stated, plaintiffs allege that they were falsely arrested as part of an undercover drug operation conducted by Defendants City of New York ("City"), Anthony DiSimone ("DiSimone"), Thomas McHale ("McHale"), Undercover Cop 0244 ("UC244"), and Undercover Cop 0114 ("UC114") (collectively "Defendants"). After amending the complaint on September 8, 2017, and withdrawing certain claims thereafter,[1] plaintiffs allege claims for false arrest, malicious prosecution, unreasonable search and seizure, assault and battery, and *respondeat*

---

[1] Plaintiffs have withdrawn all claims for negligent hiring, training, and supervision under federal and New York state law. Similarly, plaintiffs have withdrawn their failure to intervene claims and all claims brought under the Fourteenth Amendment. Plaintiff Samuel Garcia also has withdrawn all his state law claims. By not responding to defendants' collective knowledge arguments, plaintiffs have also abandoned their false arrest and malicious prosecution claims against defendants McHale and DiSimone. *See Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96, 104 (S.D.N.Y. 2012) ("[A]rguments not made in opposition to a motion for summary judgment are deemed abandoned."); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011) ("Plaintiff did not address this argument in his opposition papers, which operates as an abandonment of the argument."). Accordingly, these claims are dismissed with prejudice.

*superior*. Plaintiff Steven Serrano separately maintains a claim for excessive force. Pre-trial proceedings, including depositions, followed. Defendants now move for summary judgment on all claims, principally on the theory that the officers are entitled to qualified immunity and there was at least arguable probable cause to arrest, search, and prosecute plaintiffs. For the reasons that follow, the motion is granted in part and denied in part. The motion is granted as to all claims asserted by plaintiff Steven Serrano, and he shall be dismissed from the case. As to all claims raised by plaintiffs Samuel Garcia and Michael Serrano, the motion is denied.

### Background

Much of the background leading to plaintiffs' arrests is undisputed. But significant disputes of fact remain, and these contested facts make summary judgment inappropriate as to many of the claims asserted.

At approximately 2:00 p.m. on January 22, 2015, New York City police officers were conducting a "buy and bust" narcotics operation in the vicinity of 984 Bronx Park South in the Bronx, New York.[2] Posing as a drug buyer during the operation, UC114 solicited "JD White," a nonparty to this case, seeking to purchase heroin. After agreeing to the sale, JD White left UC114 and approached "JD Red," another nonparty to this case who was also standing near 984 Bronx Park South, and asked him to supply the heroin.

The parties agree that while this transaction was developing, plaintiffs Steven Serrano and Samuel Garcia were standing just outside the apartment building at 984 Bronx Park South, where Steven and his brother Michael Serrano were living at the time. But the parties sharply dispute plaintiffs' role in what followed. Plaintiffs contend that as Steven left his apartment that afternoon, he ran into Samuel, a former acquaintance, and struck up a

---

[2] It appears that officers were investigating a shooting at a nearby housing complex and were conducting the "buy and bust" operation in an attempt to leverage potential cooperating witnesses. *See* Pl. Rule 56.1 Statement, ECF 44, at ¶¶ 7–8.

2

conversation that lasted approximately thirty minutes. As some point during this time, plaintiffs claim that Michael Serrano arrived home, spoke with Steven and Samuel briefly, and went upstairs to the family's apartment. Plaintiffs claim that while Steven and Samuel were talking, Steven noticed two of the undercover officers, a male and a female, behaving strangely. His suspicions aroused, plaintiffs claim that Steven commented to Samuel—and only to Samuel— that he believed, based on his experience living in the neighborhood, that these two individuals were undercover cops. *See* Declaration of Szczepanski, ECF 44, Ex. 1, at 42:6–43:11. Both Steven and Samuel stated in their depositions that Steven made this remark, which was overheard by UC244, two or three times. *See* Declaration of Szczepanski, ECF 44, Ex. 1, at 44:7–9 (stating that he made the statement "maybe twice"); Declaration of Szczepanski, ECF 44, Ex. 3, at 33:14 (stating that Steven made the statement "three times, maybe"). Samuel apparently acknowledged the statement, but testified in his deposition that he neither agreed nor disagreed. *See* Declaration of Szczepanski, ECF 44, Ex. 1, 42:12–24; Declaration of Szczepanski, ECF 44, Ex. 2, at 33:2–24, 37:23–38:2. Plaintiffs contend that Michael Serrano, Steven's brother, was not present when these statements were made, and defendants do not suggest otherwise. *See* Def. Response Rule 56.1 Statement, ECF 45, at ¶ 11.

Although the police reports are contradictory, defendants now take the position that Steven made this remark not only to Samuel, but also to JD Red in an effort to warn him that the police were present.[3] In effect, defendants claim that Steven and the other plaintiffs were acting as lookouts for drug dealers in the area. The parties dispute how close Steven and Samuel

---

[3] The record is somewhat inconsistent on this point. UC244's contemporaneous report stated that Steven "then signal [sic] JD Red, don't do anything 'he's a cop.'" *See* Declaration of Kavin Thadani, ECF 41, Ex. C. However, the Criminal Complaint drafted by Officer DiSimone stated that "defendant MICHAEL SERRANO and defendant GARCIA both pointed at informant #2 and stated in sum and substance, 'THAT GUY IS A COP.'" *See* Declaration of Kavin Thadani, ECF 41, Ex. A, at 2. In any event, plaintiffs' current position renders this inconsistency irrelevant. Plaintiffs now claim that although Steven was speaking only to Samuel, he did state, in sum and substance, that he believed certain individuals in the vicinity were undercover cops. For the reasons explained below, even viewing the evidence in the light most favorable to plaintiff, this statement gave the officers arguable probable cause to arrest plaintiff Steven Serrano.

3

were standing to JD Red when the statements were made, but Steven testified at his deposition that they were approximately ten feet from JD Red at the time. *See* Declaration of Szczepanski, ECF 44, Ex. 1, at 35:8.

Meanwhile, JD White returned to UC114 and informed him that the dealers would not complete the transaction because of police presence in the area. JD White then led UC114 to a laundromat around the corner from plaintiffs' apartment. Once out of view, JD White sold UC114 three glassines of heroin. UC114 then left the area, met up with UC244, and together they notified a field team that the transaction was complete.

Having received the notification, the arrest team, which included officers DiSimone and McHale, swarmed the scene and arrested a number of individuals, including JD Red and JD White. Believing that plaintiffs were acting as lookouts in the drug transaction, and based on a positive identification from UC244, Steven, Samuel, and Michael were also arrested. During the course of his arrest, Steven admitted to having a marijuana cigarette on his person, and officers recovered the cigarette during a pat-down search. Based on this information, all three plaintiffs were arrested and charged with Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh Degree. Although UC244 apparently identified all three plaintiffs, Steven and Michael testified in their respective depositions that Michael was not present when Steven remarked that certain individuals in the area were undercover cops. *See* Declaration of Szczepanski, ECF 44, Ex. 1, at 45:23–46:3; Declaration of Szczepanski, ECF 44, Ex. 2, at 34:15–35:15. Plaintiffs also contend that Michael was inside the apartment building when the arrests began and was arrested only after he returned outside when the uniformed police officers arrived on the scene. *See* Pl. Rule 56.1 Statement, ECF 44, at ¶¶ 11, 22–23. Defendants have not advanced any evidence to the contrary, *see* Def. Response Rule 56.1 Statement, ECF 45, at ¶¶ 11, 22–23, arguing instead that plaintiffs' version of events still supports the officers' actions.

4

During his arrest, Steven asked the officers to use two sets of handcuffs on him, as they had done with Michael.[4] The officers declined to do so, cuffed Steven with a single set of handcuffs, and placed plaintiffs in the back of an NYPD van. For approximately thirty minutes after his arrest, Steven complained that his handcuffs were too tight and requested that they be loosened. Although officers loosened the handcuffs after multiple requests, plaintiffs claim that Steven suffered physical pain in the interim and had minor abrasions on his wrists. *See* Declaration of Szczepanski, ECF 44, Ex. 1, at 73:7–76:16. It is uncontested that Steven did not seek medical attention for his alleged injuries, either during or after his release from custody, nor did he experience any lasting medical issues.

After a number of court appearances, the charges against Samuel Garcia and Michael Serrano were dismissed on motion by the Bronx County District Attorney's Office. *See* Declaration of Kavin Thadani, ECF 41, Ex. M, at 2:11–15 ("Although People's motion was that there was probable cause to arrest this defendant, on further review, it is the People's position that we would be unable to meet our higher burden of proof at trial and as such are requesting dismissal at this time."). On the same day, the charges against Steven Serrano were dismissed on speedy trial grounds. *See* Declaration of Kavin Thadani, ECF 41, Ex. O, at 2:10–11.

## Discussion

Under the well-established summary judgment standard, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a

---

[4] Steven testified at his deposition that Michael was double-cuffed because of an accident. Declaration of Szczepanski, ECF 44, Ex. 1, at 74:19.

Court must "view the evidence in the light most favorable to the party opposing summary judgment, . . . draw all reasonable inferences in favor of that party, and . . . eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004).

In § 1983 claims of this kind, the Second Circuit has cautioned that because "[t]he issue of probable cause" is "predominantly factual in nature," it is "properly presented to the jury." *Moore v. Comesanas,* 32 F.3d 670, 673 (2d Cir. 1994); *see also Farrell v. City of New York,* No. 15 CIV. 8401 (PAE), 2018 WL 944400, at *10 (S.D.N.Y. Feb. 15, 2018). However, defendants also argue that the officers are entitled to qualified immunity, which is a question of law for the Court. *See Hunter v. Bryant,* 502 U.S. 224, 228 (1991) (describing qualified immunity as a legal question that "ordinarily should be decided by the court long before trial"). The Supreme Court has explained that "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby,* 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)).[5] Although an officer's entitlement to qualified immunity is a question of law for the Court, the Second Circuit has explained that even when the motion is "based on qualified immunity," "resolution of genuine factual issues is inappropriate." *McClellan v. Smith,* 439 F.3d 137, 149 (2d Cir. 2006); *see also Stephenson v. Doe,* 332 F.3d 68, 76 (2d Cir. 2003) ("A defendant should press a qualified immunity defense during pretrial proceedings so that such a claim can be disposed of by summary judgment where possible, or factual disputes material to the defense can be identified and presented to the jury.").

---

[5] In the context of a false arrest claim, qualified immunity protects officers provided that they had at least arguable probable cause to support the arrest. *Kass v. City of New York,* 864 F.3d 200, 206 (2d Cir. 2017). This issue is discussed in greater detail below.

## A. False Arrest

Defendants argue that summary judgment is appropriate on plaintiffs' false arrest claims because the officers had probable cause to support their arrests. Alternatively, defendants argue that the officers are entitled to qualified immunity because they had arguable probable cause. Analyzing each of plaintiff's claims individually, I find that, in light of the facts and circumstances known to the officers at the time of the arrests, the officers are entitled to qualified immunity only with respect to plaintiff Steven Serrano's false arrest claim. But as to plaintiffs Samuel Garcia and Michael Serrano, material disputes of fact make summary judgment inappropriate, and defendants' motion is denied as to those claims.

A § 1983 claim for false arrest that allegedly occurred in New York is "substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).[6] "To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

It is well settled that "the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). The probable cause standard is derived from the Fourth Amendment, which protects individuals from unreasonable searches and seizures, "including arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "A police officer has probable cause for an arrest when he has 'knowledge

---

[6] Although the parties do not address the issue, the amended complaint also raises a separate claim for false imprisonment. *See* Amended Complaint, ECF 27, at ¶ 64(d). But "[u]nder New York law, false arrest and false imprisonment are one and the same, and the elements for both are the same as for a false arrest claim under § 1983." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013); *see also Hatcher*, 2018 WL 1583036, at *3. As such, plaintiffs' false imprisonment claims are coterminous with their false arrest claims and can be analyzed together. *See, e.g., Hatcher*, 2018 WL 1583036, at *3.

or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *see also Jaegly*, 439 F.3d at 152; *Hatcher v. City of New York*, No. 15-CV-7500 (VSB), 2018 WL 1583036, at *4 (S.D.N.Y. Mar. 27, 2018).

"Even if probable cause for the actual arrest charge did not exist, the existence of probable cause to arrest for any offense precludes a false arrest claim." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 373 (S.D.N.Y. 2015); *see also Jaegly*, 439 F.3d at 154 ("[W]e conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."). Put differently, the actual charges invoked against plaintiffs—Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh Degree—are irrelevant. The focus of this inquiry is "on the validity of the arrest, . . . not on the validity of each charge," *Jaegly*, 439 F.3d at 154, and a claim of false arrest fails if probable cause existed to support any offense, regardless of the charge actually invoked by the arresting officer.

Defendants also claim that even if the officers lacked probable cause to arrest plaintiffs, the officers are nonetheless entitled to qualified immunity. It is well settled that "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Wesby*, 138 S. Ct. at 589 (quoting *Reichle*, 566 U.S. at 664).[7] When a

---

[7] In order for a right to be "clearly established . . . at the time of the officer's conduct," the law must be "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Moreover, "[t]o be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* "It is

claim of false arrest is made, "[a]n officer is entitled to qualified immunity . . . if he had *arguable probable cause* to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged." *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (emphasis added); *see also Collins v. City of New York*, 295 F. Supp. 3d 350, 364 (S.D.N.Y. 2018) (applying the arguable probable cause standard); *Hatcher*, 2018 WL 1583036, at *4 (same). "Arguable probable cause exists when 'it was objectively reasonable for the officer to believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met.'" *Kass*, 864 F.3d at 206 (quoting *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016)).

In sum, the doctrine of qualified immunity protects an officer "unless 'no officer of reasonable competence could have made the same choice in similar circumstances,'" *id.* (quoting *Myers*, 819 F.3d at 633), and is intended to "protect[] . . . all but the plainly incompetent or those who knowingly violate the law," *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

1. Plaintiff Steven Serrano

Defendants first seek summary judgment with respect to plaintiff Steven Serrano's false arrest claim. Because I find that the officers had at least arguable probable cause to support the arrest, the motion is granted.

The officers arrested Steven Serrano based on the following sequence of events: During the course of a "buy and bust" drug operation, UC244 heard Steven remark, at least once, that certain individuals on the street were undercover cops. Plaintiffs admit that Steven made such a statement multiple times in a conversational tone and in an area directly adjacent to drug activity. Then, apparently in response to Steven's statements, JD White informed UC114 that

---

not enough that the rule is suggested by then-existing precedent;" the "legal principle" must "clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* at 590.

his dealers would not complete the transaction because of police presence in the area. JD White then led UC114 to a laundromat around the corner to avoid detection by undercover officers and made the sale. Under these facts and circumstances, the officers had at least arguable probable cause to arrest Steven Serrano as a lookout to enable a Criminal Sale of a Controlled Substance in the Third Degree, the crime for which he was charged,[8] and for Criminal Facilitation in the Fourth Degree. His conduct could reasonably be interpreted as "conduct which provides [a third person] with means or opportunity for the commission" of a felony. N.Y. Penal Law § 115.00(1).[9]

To avoid summary judgment, plaintiffs argue that Steven Serrano made these statements to Samuel Garcia, not JD Red, and that Steven had no knowledge that drug activity was afoot. See Pl. Rule 56.1 Statement, ECF 44, at ¶¶ 11–14; see also Pl. Memorandum of Law in Opposition, ECF 44, at 10 (arguing that plaintiffs "did not interact with 'JD Red' or 'JD White' nor did they know that a drug sale was taking place near their apartment"). But this argument misapprehends the focus of the inquiry, which centers on the facts and circumstances known to the officers at the time of the arrest. Swartz, 704 F.3d at 111. And even viewing the evidence in the light most favorable to plaintiffs—that is, assuming that Steven was speaking only to Samuel—the officers still had at least arguable probable cause to believe that Steven was involved in drug activity. Steven Serrano's repeated statements that undercover officers were present were made in a conversational tone and in the immediate vicinity of a drug transaction. Officers heard these statements, and plaintiffs admit that they were made. And tellingly, after these statements were made, JD White told UC114 that the heroin deal had to be moved around

---

[8] N.Y. Penal Law § 220.39(a) provides that "[a] person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells . . . a narcotic drug."

[9] In full, N.Y. Penal Law § 115.00(1) provides that "[a] person is guilty of criminal facilitation in the fourth degree when, believing it probable that he is rendering aid . . . to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony."

the corner because "the cops [were] out" and his dealers would not complete the transaction otherwise. *See* Declaration of Kavin Thadani, ECF 41, Ex. A, at 2. Taken together and viewed from the perspective of the officers at the time, these facts and circumstances were sufficient to create arguable probable cause to support the arrest.

Moreover, Steven Serrano's false arrest claim must be dismissed for a separate reason: during the officers' pat-down search, plaintiff admitted that he had a marijuana cigarette on his person. This gave officers probable cause to arrest him for possession of marijuana under § 221.05 of the New York Penal Law.[10] To avoid this conclusion, plaintiff argues that because the officers lacked probable cause to arrest Steven in the first place, the search incident to the arrest was also unlawful and any evidence obtained therefrom cannot shield the officers from liability. *See* Pl. Memorandum of Law in Opposition, ECF 44, at 12. In effect, plaintiff is advancing a version of the fruit of the poisonous tree doctrine, "an evidentiary rule that operates in the context of criminal procedure" to exclude unlawfully obtained evidence recovered as a consequence of unlawful official conduct. *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999). This argument is foreclosed by the Second Circuit's decision in *Townes*. There, the Second Circuit explained that "[t]he fruit of the poisonous tree doctrine is calculated 'to deter future unlawful police conduct' and protect liberty by creating an incentive—avoidance of the suppression of illegally seized evidence—for state actors to respect the constitutional rights of suspects." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The need for such an incentive structure is less forceful in the civil context, and the Second Circuit has accordingly held that "[t]he fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions." *Id.*

---

[10] N.Y. Penal Law § 221.05 provides that "[a] person is guilty of unlawful possession of marihuana when he knowingly and unlawfully possesses marihuana."

11

Under *Townes*, the fruit of the poisonous tree doctrine cannot be used to "link the unreasonable search and seizure" to what came next—the discovery of the marijuana cigarette on plaintiff's person—which unquestionably gave officers probable cause to arrest plaintiff Steven Serrano. *Id.* at 145–46; *Jenkins v. City of New York*, 478 F.3d 76, 91 n.16 (2d Cir. 2007); *see also Hatcher*, 2018 WL 1583036, at *3 (S.D.N.Y. Mar. 27, 2018) ("For federal false arrest claims, even in circumstances where a preceding search is illegal, police officers may use evidence obtained in that illegal search to establish probable cause for an arrest."); *Hayes v. Perotta*, 751 F. Supp. 2d 597, 602 (S.D.N.Y. 2010); *Matthews v. City of New York*, 889 F. Supp. 2d 418, 431 (E.D.N.Y. 2012). Therefore, even if the officers lacked arguable probable cause for the initial search, plaintiff Steven Serrano's false arrest claim must be dismissed.[11]

Accordingly, because the officers had at least arguable probable cause to arrest plaintiff Steven Serrano, and because probable cause is a complete defense to a claim of false arrest, plaintiff's claim under § 1983 and state law for false arrest must fail.

2.   Plaintiff's Samuel Garcia and Michael Serrano

Applying the same framework described above to Samuel Garcia, I cannot say at this stage that the officers had arguable probable cause to support an arrest. As an initial matter, the discovery of a marijuana cigarette at the scene cannot support the arrests of Samuel Garcia or Michael Serrano. The officers found the marijuana cigarette during a pat-down search of Steven Serrano, and defendants do not claim that the officers ever observed Garcia (or Michael Serrano,

---

[11] Although the parties do not raise this issue, "[t]here is some dispute . . . as to whether this principle applies when the underlying claim is a state, rather than federal, false arrest claim." *Hatcher*, 2018 WL 1583036, at *3 (collecting cases from New York state courts). But courts in this district have recognized that despite "some ambiguity as to whether New York courts apply the same reasoning as *Townes*, qualified immunity protects an officer" in circumstances of this kind. *Id.* at *4; *see also Cabral v. City of New York*, 662 F. App'x 11, 13 (2d Cir. 2016) (holding that "[w]hatever ambiguity may exist as to [the New York Court of Appeals'] adoption of *Townes's* reasoning," the officer was entitled to "qualified immunity with regard to the state claim"). Accordingly, the officers are also entitled to qualified immunity on the same theory for plaintiff Steven Serrano's state law claims for false arrest.

for that matter) in possession of a controlled substance.[12] It is also clear, and defendants do not suggest otherwise, that neither Garcia nor Michael Serrano had constructive possession over the marijuana cigarette in Steven Serrano's pocket at the time of the arrests. *See People v. Manini*, 79 N.Y.2d 561, 572–73 (1992) ("In New York, the rule has long been that to support a charge that a defendant was in constructive possession of tangible property, the People must show that the defendant exercised 'dominion or control' over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized."); *United States v. Paulino*, 445 F.3d 211, 222 (2d Cir. 2006) ("Constructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." (internal quotation marks omitted) (quoting *United States v. Gordils*, 982 F.2d 64, 71 (2d Cir. 1992))); *see also* N.Y. Penal Law § 10.00(8) (defining possession). As such, Samuel Garcia and Michael Serrano's arrests cannot be premised on criminal possession of marijuana.

Moreover, as to Samuel Garcia, there are genuine disputes of fact concerning his involvement in the drug transaction at issue in this case. It is apparently undisputed that only Steven Serrano, and not Garcia, commented aloud on the presence of undercover officers outside of 984 Bronx Park South. In his deposition, Garcia stated that he perhaps acknowledged Steven Serrano's statements concerning police activity, but was uninterested because it had "nothing to do with [him]." Declaration of Szczepanski, ECF 44, Ex. 2, at 33:8. Defendants have not seriously advanced a contrary version of events, arguing instead that Garcia's mere presence next to Steven Serrano at the time the statement was made is sufficient to support the arrest. *See Def.*

---

[12] Defendants separately argue that "it is undisputed that plaintiff Samuel Garcia was smoking marijuana outside of 984 Bronx Park South a short time before his arrest." Def. Memorandum of Law, ECF 43, at 10. But this revelation came out in plaintiffs' depositions. It is uncontested that the officers never observed Garcia smoking marijuana before his arrest; indeed, the criminal complaint alleges *possession* of marijuana. *See* Declaration of Kavin Thadani, ECF 41, Ex. A, at 1; *see also Swartz*, 704 F.3d at 111 (focusing on the officer's knowledge at the time of the arrest).

13

Memorandum of Law, ECF 43, at 10–11. This argument proves too much. Based on the evidence presented, the Court is left with only a vague impression of Samuel Garcia's conduct prior to his arrest, and what little information is presented suggests that his involvement in the drug transaction was minimal or nonexistent. Even granting defendants the widest possible berth of qualified immunity, the doctrine cannot be used to justify the arrest of a mere bystander to criminal activity. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). Viewing the evidence in the light most favorable to plaintiffs, as I am required to do, that is precisely what Samuel Garcia appears to have been.

The evidence suggests that Michael Serrano's connection to the drug transaction was even more attenuated. According to plaintiffs' version of the events, which is supported by all three plaintiffs' deposition testimony, Michael was not present when Steven stated aloud that undercover cops were in the area, nor was he outside when the arrests began. Michael testified that he was inside the family apartment when the arrests began and returned outside only after hearing his brother yelling. *See* Declaration of Szczepanski, ECF 44, Ex. 2, at 33:2–24, 37:23–38:2. Defendants have not advanced a alternative version of events, *see* Def. Response Rule 56.1 Statement, ECF 45, at ¶¶ 11, 22–23, and in any event, any conflicting evidence in the record merely creates a genuine dispute of fact for trial.

Under these circumstances, and given the disputed facts presented by the parties, I cannot say that the officers had probable cause, or even arguable probable cause, to support the arrests of Samuel Garcia and Michael Serrano. As such, defendants' motion for summary judgment on these claims is denied.

## B. Unreasonable Search and Seizure

Plaintiffs also raise claims for unreasonable search and seizure under § 1983 and state law. Under § 1983, a plaintiff may recover money damages for unreasonable searches and

seizures that violate the Fourth Amendment. In analyzing such a claim, "courts look to the reasonableness of the search when determining whether a search violated a plaintiff's constitutional rights." *Hatcher*, 2018 WL 1583036, at *7 (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). However, officers are generally permitted to conduct reasonable searches incident to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). Therefore, to the extent that there was probable cause to support plaintiffs' arrests, any reasonable searches incident to their arrests were also lawful, *see Guerrero v. City of New York*, No. 12 CIV. 2916, 2013 WL 673872, at *4 n.3 (S.D.N.Y. Feb. 25, 2013) ("In addition, to the extent that Guerrero is basing his § 1983 claim on an allegedly unreasonable search, . . . this claim fails as well, because a search incident to a lawful arrest is per se reasonable."); *Moore v. Hearle*, 639 F. Supp. 2d 352, 356 (S.D.N.Y. 2009) ("Generally, officers are justified in conducting searches incident to a lawful arrest in order to ensure the safety of officers as well as to prevent the destruction of evidence."); *Walker v. City of New York*, No. 15 CV 500 (NG) (ST), 2017 WL 2799159, at *6 (E.D.N.Y. June 27, 2017) ("Because there was probable cause for plaintiff's arrest, the search of his person was lawful.").

As such, plaintiffs' unreasonable search and seizure claims turn entirely on the probable cause analysis conducted above. Because I have already found that the officers had at least arguable probable cause to support the arrest of plaintiff Steven Serrano, the officers are also entitled to qualified immunity as to his unreasonable search and seizure claim.[13] *See Walker*, 2017 WL 2799159, at *6. Defendants' motion for summary judgment is therefore

---

[13] Unlike his false arrest claim, the discovery of the marijuana cigarette cannot support the officers' search of plaintiff Steven Serrano, for the cigarette was found only once the search began *See Townes*, 176 F.3d at 148 ("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy—including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution."); *Matthews*, 889 F. Supp. 2d at 431 (finding that "plaintiffs must allege damages attributable to the claims for unreasonable search and seizure to recover under Section 1983" and could not recover damages for false arrest). Regardless, because I find that Steven Serrano's initial arrest was supported by arguable probable cause independent of his marijuana possession, plaintiff cannot maintain an unreasonable search and seizure claim. *See Walker*, 2017 WL 2799159, at *6.

granted as to Steven Serrano. But because I have found that summary judgment is inappropriate on the question of arguable probable cause to arrest plaintiffs Samuel Garcia and Michael Serrano, *see supra* section A.2, their claims for unreasonable search and seizure also must survive. Accordingly, defendants' motion for summary judgment as to Samuel Garcia and Michael Serrano is denied.

### C.    Malicious Prosecution

Plaintiffs also raise claims for malicious prosecution under § 1983 and state law. The elements of malicious prosecution under New York law are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotation marks omitted) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Additionally, "[i]n order to allege a cause of action for malicious prosecution under § 1983, [plaintiffs] must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Hatcher*, 2018 WL 1583036, at *5 (applying these elements); *Lynch v. City of New York*, No. 16 CIV. 7355 (LAP), 2018 WL 1750078, at *7 (S.D.N.Y. Mar. 27, 2018) (same).

As with claims for false arrest under § 1983, "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). However, "[t]he Second Circuit has clarified that 'probable cause' in the malicious prosecution context means 'probable cause to believe that [the prosecution] could succeed.'" *Garcia v. Cty. of Westchester*, No. 11-CV-7258 (KMK), 2017 WL 6375791, at *23 (S.D.N.Y.

16

Dec. 12, 2017) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). This is so because "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). Courts must therefore take care not to "conflate probable cause to arrest with probable cause to believe that [a plaintiff] could be successfully prosecuted," for "[o]nly the latter kind of probable cause is at issue with respect to the malicious prosecution claim." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999). This distinction is not relevant to this case, however. First, plaintiffs have not attempted to differentiate between the two standards, instead relying solely on the theory that the officers lack probable cause to support their arrests. *See* Pl. Memorandum of Law in Opposition, ECF 44, at 12. Second, this distinction is meant to capture the notion that although probable cause might exist at the time of arrest, "evidence could later surface which would eliminate that probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotation marks omitted) (quoting *Cox v. County of Suffolk*, 780 F. Supp. 103, 108 (E.D.N.Y. 1991)). In such a case, the Second Circuit has explained that "[i]n order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Id.*; *see also Garcia*, 2017 WL 6375791, at *23 ("If, however, 'probable cause existed at the time of the arrest and the plaintiff offers no additional facts to show that it dissipated post-arrest, then the claim for malicious prosecution cannot be maintained.'" (quoting *Jimenez v. City of New York*, No. 15-CV-3257, 2016 WL 1092617, at *4 (E.D.N.Y. Mar. 21, 2016))). Plaintiffs have not advanced any such theory, nor is there any reason to believe this distinction is relevant to the facts of this case.

As to plaintiff Steven Serrano, I find that the totality of the facts and circumstances described above also support a finding of arguable probable cause to support his prosecution. Based on Steven Serrano's statements, the context in which they were made, and the fact that the drug transaction was relocated apparently in response, the officers had probable

cause to believe that the prosecution against him could succeed. *Boyd*, 336 F.3d at 76. Accordingly, the officers are entitled to qualified immunity as to plaintiff Steven Serrano's malicious prosecution claims, and the motion for summary judgment is granted as to him. But as to plaintiffs Samuel Garcia and Michael Serrano, I already have held that summary judgment is inappropriate on the question of arguable probable cause to support their arrests. *See supra* section A.2. Because "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases," *Stansbury*, 721 F.3d at 95, the officers necessarily lacked sufficient probable cause to support the prosecutions of Samuel Garcia and Michael Serrano.

Defendants also argue that plaintiffs have not put forth evidence to "prove the fourth element of [a malicious prosecution] claim—that the prosecution was motivated by malice." *Lowth*, 82 F.3d at 573. To show malice, plaintiffs must demonstrate that "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Dufort v. City of New York*, 874 F.3d 338, 353 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502–03 (1978)). I find that plaintiffs have sufficiently established malice to survive summary judgment. First, in most cases, "[a] lack of probable cause generally creates an inference of malice." *Boyd*, 336 F.3d at 78; *see also Dufort*, 874 F.3d at 353 ("Malice may be inferred . . . from the absence of probable cause."). Moreover, plaintiffs' theory is that their prosecutions were motivated to induce cooperation in an unrelated investigation into a nearby shooting, which "also supports the inference that the prosecution against him was improperly motivated." *Dufort*, 874 F.3d at 354 (holding that the plaintiff had demonstrated a material dispute of fact when the trial attorney "was told by detectives that they were treating [the plaintiff] as a suspect solely in order to induce him to testify against other participants").

Because the record also presents genuine issues of fact on the question of malice, the motion for summary judgment is denied as to plaintiffs Samuel Garcia and Michael Serrano.

## D.    Excessive Force

Plaintiff Steven Serrano also brings a claim for excessive force, principally arguing that the handcuffs placed on his wrists were too tight and his pleas to loosen the cuffs went unanswered.[14] "A claim of excessive use of force during an arrest is analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Case v. City of New York*, 233 F. Supp. 3d 372, 385 (S.D.N.Y. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

The Second Circuit has "recognized that excessively tight handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment." *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015). "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: (1) the handcuffs were unreasonably tight; (2) the defendants ignored the [plaintiffs'] pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists." *Case*, 233 F. Supp. 3d at 385 (internal quotation marks omitted) (quoting *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008)); *see also Lloyd v. City of New York*, 246 F. Supp. 3d 704, 724 (S.D.N.Y. 2017). Courts have placed particular emphasis on the injury requirement, *see Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013), and "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury

---

[14] Plaintiffs Samuel Garcia and Michael Serrano do not allege claims for excessive force.

beyond temporary discomfort," *Lynch*, 567 F. Supp. 2d at 468. Although an alleged injury need not be "severe or permanent," *Vogeler v. Colbath*, No. 04 CIV. 6071(LMS), 2005 WL 2482549, at *9 (S.D.N.Y. Oct. 6, 2005), it must be more than merely "de minimis," *Usavage*, 932 F. Supp. 2d at 592.

Here, even viewing the facts in the light most favorable to plaintiff, defendants are entitled to summary judgment. The record shows that after Steven Serrano complained that his handcuffs were too tight (and initially requested that he be double-cuffed), the officers loosened his handcuffs. The officers did not, as plaintiff claims, ignore his pleas that the handcuffs were too tight. *Case*, 233 F. Supp. 3d at 385. Moreover, plaintiff has not established an injury that rises above a de minimis level. There is no dispute that Steven Serrano never requested medical treatment while in custody, nor did he seek medical treatment following his release. *See Usavage*, 932 F. Supp. 2d at 592 (noting that "[t]he most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage"). As a general rule, "[c]ourts in this Circuit have . . . found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising." *Lloyd*, 246 F. Supp. 3d at 724 (internal quotation marks omitted) (quoting *Omor v. City of New York*, No. 13-cv-2439 (RA), 2015 WL 857587, at *7 (S.D.N.Y. Feb. 27, 2015)). The law is clear that the evidence raised here is insufficient to support an excessive force claim. Accordingly, the motion for summary judgment as to Steven Serrano's excessive force claim is granted.

### E.    Assault and Battery

Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (internal quotation marks omitted) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)); *see also Green v. City of New York*, 465 F.3d

20

65, 86 (2d Cir. 2006); *Rucks v. City of New York*, 96 F. Supp. 3d 138, 152 (S.D.N.Y. 2015). Although all three plaintiffs assert claims under New York state law for assault and battery, the claims rest on different theories.

1. Steven Serrano

Plaintiff Steven Serrano's assault and battery claim rests on two grounds: (1) unlawful physical contact incident to an allegedly unlawful arrest, and (2) assault and battery related to the tightness of the handcuffs. On the first of these grounds, the existence of probable cause to support plaintiff's arrest fatally undermines his claim. The law is clear that "where there has been a lawful arrest, intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable." *Leibovitz v. City of New York*, No. 14 Civ 3297 (RA) (JCF), 2016 WL 3671232, at *8 (S.D.N.Y. Mar. 17, 2016) (internal quotation marks omitted) (quoting *Cunningham v. United States*, 472 F. Supp. 2d 366, 381 (E.D.N.Y. 2007)); *see also Lloyd*, 246 F. Supp. 3d at 729. Accordingly, because the officers had probable cause to arrest plaintiff, Steven Serrano cannot maintain an assault and battery claim under New York law.

As to plaintiff's handcuffing theory, assault and battery claims of this kind "are evaluated like excessive force claims." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 295 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Brown v. City of New York*, No. 11–CV–1068, 2013 WL 491926, at *10 (S.D.N.Y. Feb. 8, 2013)). This is so because "except for § 1983's requirement that the tort be committed under color of state law, the essential elements of the two claims" are "substantially identical." *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991); *Lloyd*, 246 F. Supp. 3d at 729; *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 440 (S.D.N.Y. 2014) ("New York courts analyze assault and battery claims against police officers using the same standard applicable to excessive force claims under Section 1983."). Because plaintiff has

failed to establish a claim for excessive force under § 1983, defendants' motion for summary judgment as to Steven Serrano's assault and battery claims is also granted.

2. Michael Serrano

Plaintiff Michael Serrano has not alleged that officers used excessive force during the course of his arrest.[15] Instead, plaintiff relies on the first ground discussed above—i.e., that because his underlying arrest was unlawful, any contact associated with it was also unlawful. *See Rucks*, 96 F. Supp. 3d at 152–53 ("[I]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest."); *Goonewardena v. Spinelli*, No. 15-CV-5239 (MKB) (ST), 2017 WL 4280549, at *11 (E.D.N.Y. Sept. 26, 2017) ("New York law holds that any force used during the course of an unlawful arrest gives rise to assault and battery claims against the arresting officers.").

Because the issue of arguable probable cause to arrest Michael Serrano raises a disputed issue of material fact, plaintiff's assault and battery claim also must be put to a jury. *See Goonewardena*, 2017 WL 4280549, at *11 ("Accordingly, because Plaintiff has established a false arrest claim against [defendant police officers], under New York law, Plaintiff has established assault and battery claims against [the defendants]."); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 530–31 (S.D.N.Y. 2013) ("If an arrest is unlawful, an arresting police officer commits a battery when he or she touches the arrestee, including during the application of handcuffs."); *cf. Lloyd*, 246 F. Supp. 3d at 729 ("But because Plaintiff's excessive force claims based upon the pushing and handcuffing incidents must be decided by a jury, so too must her state law assault and battery claims."). Accordingly, the motion for summary judgment is denied.

---

[15] As noted above, *see supra* Note 1, all of plaintiff Samuel Garcia's state law claims have been dismissed.

## F.  Municipal Liability

Finally, defendants argue that they are entitled to summary judgment as to all claims against the City brought under a theory of *respondeat superior*.

Unlike claims brought under § 1983, "New York law permits plaintiffs to hold municipalities vicariously liable for torts committed by employees while acting within the scope of their employment." *Tompkins*, 50 F. Supp. 3d at 440; *see also Ackerson v. City of White Plains*, 702 F.3d 15, 22 (2d Cir. 2012). However, there can be no vicarious liability in the absence of individual liability on the part of a City's employees. *See Hatcher*, 2018 WL 1583036, at *10 (explaining that where "there are no viable tort claims against the individual Defendants, there is no basis for City liability under a *respondeat superior* theory"); *Jenkins v. City of New York*, No. 10 CIV. 4535 AJN, 2013 WL 870258, at *14 (S.D.N.Y. Mar. 6, 2013).

Therefore, to the extent that plaintiffs retain state law claims against individual officers, the City may be held vicariously liable under a theory of *respondeat superior*. *Mesa v. City of New York*, No. 09 CIV. 10464 JPO, 2013 WL 31002, at *34 (S.D.N.Y. Jan. 3, 2013) ("Accordingly, where Plaintiffs' state law claims survive, so too do their *respondeat superior* claims against the City."). Because all of plaintiff Steven Serrano's state law claims have been dismissed, all pendant state law claims against the City also are dismissed. *See Hatcher*, 2018 WL 1583036, at *10. But as to plaintiff Michael Serrano, the City may be held liable for his remaining state law claims for false arrest, malicious prosecution, unreasonable search and seizure, and assault and battery. *See Bleiwas v. City of New York*, No. 15 CIV. 10046 (ER), 2017 WL 3524679, at *4 (S.D.N.Y. Aug. 15, 2017) ("Additionally, because the Court finds that Plaintiff has sufficiently alleged a state false arrest claim, the City may be held liable pursuant to a theory of *respondeat superior*."); *Ramos v. City of New York*, No. 15 CIV. 6085 (ER), 2017 WL 3267736, at *12 (S.D.N.Y. July 31, 2017) ("Here, the Court has found that Plaintiffs have a viable malicious prosecution claim against Detective Marrero as it relates to the charge of the

sale of a controlled substance. Therefore, to the extent Plaintiffs seek to impose liability on the City for the remaining malicious prosecution claim, they are allowed to proceed."); *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 381 (S.D.N.Y. 2010) ("The remaining state law claim of assault and battery against the City of White Plains is alive due to the potential for vicarious liability for actions of its police officers as its employees."). Accordingly, defendants' motion for summary judgment is granted as to all state law claims brought by Steven Serrano, but denied as to all remaining state law claims brought by Michael Serrano.

## Conclusion

For the reasons stated herein, the motion for summary judgment is granted in part and denied in part. The motion is granted as to all claims asserted by plaintiff Steven Serrano, and his complaint against defendants is dismissed. As to all claims raised by plaintiffs Samuel Garcia and Michael Serrano, the motion is denied. Plaintiffs Samuel Garcia and Michael Serrano shall retain claims for false arrest, unreasonable search and seizure, and malicious prosecution. Michael Serrano shall also retain his state law claim for assault and battery, as well as all pendant state law claims against the City under *respondeat superior*.

The clerk is instructed to terminate the motion (ECF 40). The oral argument, currently scheduled for July 26, 2018, is cancelled. Plaintiffs shall amend their complaint to reflect that the claims of Steven Serrano have been dismissed, and restate, without change, the claims by Samuel Garcia and Michael Serrano. The parties shall appear for a status conference on August 17, 2018, to determine what discovery remains, and if none remains, to set a trial date.

SO ORDERED.

Dated:     July 11, 2018
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge